Felipe OTEZE FOWLKES,
Plaintiff–Appellant,

v.

John ADAMEC, Counselor, Paul Thomas, District Manager, and Joseph F. Gibbons, Administrative Law Judge,[1] Defendants–Appellees.

Docket No. 03–6095.

United States Court of Appeals, Second Circuit.

Argued: Nov. 16, 2005.

Decided: Dec. 6, 2005.

1. By order of the District Court dated April 15, 2002, Joseph F. Gibbons was dismissed from this case under the doctrine of quasi-judicial immunity. The plaintiff-appellant does not appeal this dismissal.

Gerald A. McIntyre, National Senior Citizens Law Center (Roberta L. Mueller, on the brief), Los Angeles, CA, for Plaintiff–Appellant.

Dennis J. Canning, Assistant Regional Counsel, Social Security Administration (Lisa De Soto, General Counsel, Barbara L. Spivak, Chief Counsel, Region II, Social Security Administration; Joseph A. Pavone, United States Attorney for the Northern District of New York, Albany, NY, on the brief), New York, NY, for Defendants–Appellees.

Rochelle Bobroff, AARP Foundation Litigation (Stuart Cohen, AARP Foundation Litigation; Michael Schuster, AARP, on the brief), Washington, D.C., for Amicus Curiae AARP in support of Plaintiff–Appellant.

Catherine M. Callery, Greater Upstate Law Project, Inc., Rochester, NY; Louise M. Tarantino, Greater Upstate Law Project, Inc., Albany, N.Y. (Barbara Samuels, Legal Services for New York City, New York, NY; William Leinhard, Urban Justice Center, New York, NY; Joanne Lewis, Connecticut Legal Services, Middletown, CT; Charlotte Fischman, Kramer

Levin Naftalis & Frankel LLP, New York, NY; Greg Bass, Greater Hartford Legal Aid, Inc., Hartford, CT, Maryann Zavez, South Royalton Legal Clinic at Vermont Law School, South Royalton, VT; Shelley White, New Haven Legal Assistance Assoc., New Haven, CT, on the brief), for Amici Curiae GULP, et al., in support of Plaintiff-Appellant's request for reversal of the District Court's decision.

Before: STRAUB and RAGGI, Circuit Judges, and RAKOFF, District Judge[2].

STRAUB, Circuit Judge.

Plaintiff-Appellant Felipe Oteze Fowlkes ("Fowlkes") appeals from a March 31, 2003, judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*) dismissing his civil rights action, which alleges improper suspension of his social security benefits, and declining to treat the action as a petition for review of a decision of the Social Security Administration ("SSA" or the "Commissioner"). For the reasons stated below, we remand this action to the District Court with instructions to treat Fowlkes's complaint as a petition for review of the Commissioner's suspension of Fowlkes's benefits and to remand to the Commissioner to examine whether Fowlkes's benefits were suspended as of the date of a warrant or order issued by a court or other authorized tribunal on the basis of a finding that Fowlkes fled or was fleeing from justice, pursuant to 42 U.S.C. § 1382(e)(4)(A) (2000) and 20 C.F.R. § 416.1339(b)(1).

## FACTS AND PROCEDURAL BACKGROUND

In 1997, Fowlkes applied for and was granted Supplemental Security Income ("SSI") benefits after an Administrative Law Judge ("ALJ") determined that he was disabled based on a mental illness. On September 7, 1999, Fowlkes was indicted by a grand jury in Nottaway County Circuit Court in Virginia for felony larceny, and on November 2, 1999, Fowlkes was indicted in the same court for making a false material statement on a voter registration form.

On March 16, 2000, the SSA informed Fowlkes—who was then residing in Schenectady, New York—that he had been determined to be a fugitive felon ineligible for SSI benefits on the basis of the Virginia indictments. The notice stated that Fowlkes's benefits were being suspended retroactively to September 1999, although Fowlkes had already been paid for months between September 1999 and March 2000.[3] The SSA considered the benefits to be an overpayment.

Fowlkes requested a hearing to challenge the suspension of his benefits, and testified before an ALJ on November 29, 2000. In ruling after the hearing, the ALJ noted that the issue under consideration was whether Fowlkes "continue[d] to be ineligible for [SSI] benefits" pursuant to 42 U.S.C. § 1382(e)(4)(A) "because of an outstanding warrant for arrest on felony charges." The ALJ concluded that because the Nottoway County Sheriff verified that two felony charges were pending against Fowlkes, he was a fugitive felon. On April 10, 2001, Fowlkes filed a request

---

2. The Honorable Jed S. Rakoff, District Judge, United States District Court for the Southern District of New York, sitting by designation.

3. The parties agree on these facts, as well as the fact that Fowlkes was also paid for April

2000 and that Fowlkes was not entitled to benefits as of May 2000 because of his incarceration in Rensselaer County, N.Y. on April 23, 2000, for attempted robbery.

for review by the SSA Appeals Council, which denied his request.

On April 1, 2002, Fowlkes filed the instant action *pro se* in the United States District Court for the Northern District of New York. The complaint named as defendants John Adamec and Paul· Thomas—two officials from the Schenectady, N.Y. SSA District Office—and the ALJ who had affirmed the SSA's decision, Joseph F. Gibbons, claimed that his right to due process had been violated, and requested an injunctive order reinstating Fowlkes's benefits and granting him compensatory and punitive damages.

Fowlkes argued in his complaint that the defendants wrongly determined that he was a "fleeing felon" under 42 U.S.C. § 1382(e)(4)(A) because, although Fowlkes was informed by the Nottoway County Sheriff's Department that he would be arrested if found in Virginia, the sheriff's department declined to issue an extradition warrant outside Virginia. Fowlkes argued that without an order of return to Virginia, he was not a fugitive from justice and thus could not be deemed a fleeing felon.

The District Court *sua sponte* dismissed the case against ALJ Gibbons under the doctrine of quasi-judicial immunity, and referred the motion to dismiss to Magistrate Judge David R. Homer. The magistrate judge issued a Report and Recommendation on March 5, 2003, in which he recommended that Fowlkes's civil rights claim be dismissed, but that the action be converted into an appeal of an adverse decision of the SSA pursuant to 42 U.S.C. § 405(g), with Commissioner Joanne B. Barnhart substituted as defendant. The magistrate judge held that a person is "fleeing" under 42 U.S.C. § 1382(e)(4)(A) and 20 C.F.R. § 416.1339 when " 'he hides or absents himself with the intent to frustrate prosecution.' " *Fowlkes v. Adamec,*

No. 02–CV–468, Report–Recommendation and Order, Slip. Op., at 10 (N.D.N.Y. Mar. 5, 2003) (quoting *United States v. Rivera–Ventura,* 72 F.3d 277, 280 (2d Cir.1995)). The magistrate judge found that there was no evidence that Fowlkes knew of the charges prior to March 16, 2000, nor that he had fled the jurisdiction in an attempt to avoid prosecution. Therefore, the magistrate judge held that no evidence supported the ALJ's finding that Fowlkes was a fleeing felon prior to March 16, 2000. The magistrate judge further held that there existed. some evidence that Fowlkes was a fleeing felon *after* March 16, 2000. Accordingly, the magistrate judge recommended that the decision of the Commissioner be reversed as to the effective date of the suspension and remanded for a recalculation of benefits, if any, to which Fowlkes was entitled for the period from September 1999 to March 2000.

In March 2003, Fowlkes filed *pro se* objections to the magistrate judge's report and recommendation. Fowlkes objected to the magistrate judge's conclusion that evidence existed that he was a fugitive felon as of March 16, 2000. He asserted that he did not actually receive notice of the basis for the suspension from the SSA until he voluntarily went to the Schenectady Police Department on April 1, 2000. Fowlkes also asserted that the SSA did not have the authority to deem him a fugitive felon absent a finding of such status in an extradition proceeding. Finally, Fowlkes stated that he had already received SSI benefits for the period between September 1999 and March 2000, and therefore did not wish for a remand to "recalculate" benefits; but appears to have been seeking a finding that he had *never* been a fleeing felon and thus that his benefits should be "restored" completely.

On March 31, 2003, the District Court adopted the recommendation of the magis-

trate judge only inasmuch as it recommended the dismissal of Fowlkes's civil rights claim. Addressing Fowlkes's claim as a Fifth Amendment due process claim pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the District Court noted that "courts should decline to create a remedy for constitutional violations where there is an 'explicit congressional declaration' that injured parties should be 'remitted to another remedy, equally effective in the view of Congress.'" *Fowlkes v. Adamec*, No. 02–CV–468, Decision & Order, Slip. Op., at 3–4 (N.D.N.Y. Mar. 31, 2003) (quoting *Bivens*, 403 U.S. at 397, 91 S.Ct. 1999). The District Court then noted that 42 U.S.C. § 405(g) provided for judicial review of disability benefit determinations. The District Court also held that even assuming Fowlkes's claim was actionable under *Bivens*, Fowlkes had failed to state a due process claim, as he was afforded an ALJ hearing that satisfied the "fundamental requirement of due process" that he have "notice and the opportunity to be heard at a meaningful time in a meaningful manner." *Id.* at 4 (internal quotation marks omitted).

The District Court also stated that "the magistrate judge's recommendation to convert the action and remand it back to the Commissioner for further determination" was the "only avenue available" to Fowlkes. *Id.* at 5. The District Court however, declined to adopt this recommendation because it found that Fowlkes "clearly does not want that relief." *Id.* The District Court therefore did not convert Fowlkes's action to a petition for review. Judgment was entered on March 31, 2003.

Fowlkes filed a timely notice of appeal on April 16, 2003. On January 15, 2004, this Court *sua sponte* appointed counsel to represent Fowlkes for this appeal, and di-

rected the parties to brief (1) whether, under 42 U.S.C. § 1382(e)(4)(A), Fowlkes was "fleeing to avoid prosecution, or custody or confinement after conviction"; (2) what standard of review applies and what standard of deference, if any, is appropriate to applicable regulations or other interpretive authority of the SSA; and (3) what relief, if any, Fowlkes is entitled to if we determine that he was not statutorily ineligible for SSI benefits. *See Fowlkes v. Adamec*, 85 Fed.Appx. 266 (2d Cir.2004).

In his counseled brief, Fowlkes argues that he was not a fugitive felon ineligible for SSI benefits under 42 U.S.C. § 1382(e)(4)(A) as of September 1999 because (1) the statute requires he have an intention to flee, which Fowlkes argues that he lacked prior to March 2000 because he was not aware of the indictments against him in Virginia, and after March 2000 because an intent to flee cannot be inferred where a petitioner was financially unable to return to the charging state; and (2) the regulations require a court order finding that Fowlkes was a fleeing felon before the SSA can suspend benefits, and no such court order existed here. The Commissioner responds that 42 U.S.C. § 1382(e)(4)(A) does not require a showing of intent, that the regulations do not require a court order, and that these interpretations are entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). On April 22, 2005, Fowlkes submitted a *pro se* supplemental brief reiterating his appeal of the District Court's dismissal of his § 1983 claim.

Two *amicus* briefs have been submitted on behalf of Fowlkes, one by the American Association of Retired Persons ("AARP"), and another by the Greater Upstate Law Project ("GULP"), Legal Services for New York City, the Mental Health Project of

the Urban Justice Center, the National Alliance for the Mentally Ill of New York City, Connecticut Legal Services, Greater Hartford Legal Aid, New Haven Legal Assistance Association, and the South Royalton Legal Clinic at Vermont Law School.

## DISCUSSION

### I. Civil Rights Claim

■ This Court reviews *de novo* the District Court's grant of the defendants' motion to dismiss Fowlkes's civil rights claim for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). *See Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). We must accept the facts alleged in the complaint as true and construe all reasonable inferences in Fowlkes's favor. *Id.* The complaint may be dismissed where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991) (internal quotation marks omitted)).

■ Fowlkes argued below, and argues on appeal, that the SSA violated his Fifth Amendment right to due process in suspending his SSI benefits. "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001) (internal quotation marks omitted). Fowlkes's claim satisfies the first of these requirements in that an individual's interest in continued receipt of social security benefits has been recognized as a statutorily created property interest protected by the Fifth Amendment. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Fowlkes has not, however, been deprived of this interest as a result of insufficient process. Fowlkes admits to having notice of the suspension and to participating in an ALJ hearing during which he had the opportunity to introduce evidence establishing his continued eligibility for SSI benefits. As the District Court correctly noted, the "plaintiff was afforded all the process he was due. His complaint is simply that he disagrees with the administrative interpretation and application of the 'fleeing felon' rule." *Fowlkes v. Adamec,* No. 02–CV–468, Decision & Order, Slip. Op., at 4 (N.D.N.Y. Mar. 31, 2003). As such, the District Court did not err in dismissing Fowlkes's civil rights claim.

■ Furthermore, as Fowlkes's arguments focus on the sufficiency of the evidence and the legal standards used in determining that he was a fugitive felon ineligible for benefits, we agree with the magistrate judge that his complaint is more properly construed as a request for judicial review of a decision of the Commissioner under 42 U.S.C. § 405(g).

### II. Review of SSA Commissioner's Decision

■ When reviewing the Commissioner's decision denying benefits, we "review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel,* 276 F.3d 103, 108 (2d Cir.2002). Fowlkes argues that his benefits were improperly suspended because the plain language of 42 U.S.C. § 1382(e)(4)(A) requires a finding of intent. He also argues that SSA regulations provide that the effective date of the suspension of benefits is the date on which a warrant or order is issued on the basis of a finding that an individual has fled or is fleeing from justice and that there existed no warrant or

court order finding that Fowlkes had fled or was fleeing from justice.

Under 42 U.S.C. § 1382(e)(4)(A), an individual is ineligible to receive SSI benefits during any month in which he is "fleeing to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which the person flees, for a crime, or an attempt to commit a crime, which is a felony under the laws of the place from which the person flees." 42 U.S.C. § 1382(e)(4)(A)(i). The statute's implementing regulation, 20 C.F.R. § 416.1339(b)(1), provides that the suspension of an individual's benefits is effective on the first day of the earlier of:

(i) The month in which a warrant or order for the individual's arrest or apprehension, an order requiring the individual's appearance before a court or other appropriate tribunal (e.g., a parole board), or similar order is issued by a court or other duly authorized tribunal on the basis of an appropriate finding that the individual—

(A) Is fleeing, or has fled, to avoid prosecution as described in paragraph (a)(1) of this section;

(B) Is fleeing, or has fled, to avoid custody or confinement after conviction as described in paragraph (a)(2) of this section;

(C) Is violating, or has violated, a condition of his or her probation or parole as described in paragraph (a)(3) of this section; or

(ii) The first month during which the individual fled to avoid such prosecution, fled to avoid such custody or confinement after conviction, or violated a condition of his or her probation or parole, if indicated in such warrant or order, or in a decision by a court or other appropriate tribunal.

20 C.F.R. § 416.1339(b)(1).

■ The Commissioner contends that the statute does not require proof of a felon's intent to flee and that the only court order required by the regulation is a warrant for an individual's *arrest*, not a warrant indicating that an individual has fled from justice. The Commissioner argues that this interpretation of the regulation is contained in the Social Security Program Operations Manual Systems ("POMS"). The POMS state that an individual is ineligible to receive SSI benefits beginning any month "in which a warrant, a court order or decision, or an order or decision by an appropriate agency . . . is issued which finds that the individual is *wanted in connection with a crime that is a felony*," and that "[t]he warrant does not have to state that the individual is 'fleeing' for the suspension to apply." POMS SI 00530.010 (emphasis added). Another written employee instruction, EM–98075, states that a warrant "need only specify that an individual is wanted in connection with a felony charge" for that individual to be determined to be a fleeing felon. Instruction EM–98075.

Even assuming that the employee manuals/instructions should be afforded deference generally, *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir.1998), we need not afford any deference to the manuals here, because the plain language of the statute and its implementing regulation do not permit the construction contained within the manuals.

The statute does not permit the Commissioner to conclude simply from the fact that there is an outstanding warrant for a person's arrest that he is "fleeing to avoid prosecution," 42 U.S.C. § 1382(e)(4)(A). "Fleeing" in § 1382(e)(4)(A) is understood to mean the conscious evasion of arrest or prosecution. *See Black's Law Dictionary* 670 (8th ed.2004) (defining "flight" as "[t]he act or an instance of fleeing, esp. to

evade arrest or prosecution"). Thus, there must be some evidence that the person knows his apprehension is sought. The statute's use of the words "to avoid prosecution" confirms that for "flight" to result in a suspension of benefits, it must be undertaken with a specific intent, i.e., to avoid prosecution.

This construction of the statute finds support in our interpretation of the phrase "fleeing from justice" in 18 U.S.C. § 3290 ("No statute of limitations shall extend to any person fleeing from justice."). In *Jhirad v. Ferrandina*, 486 F.2d 442, 444 (2d Cir.1973), we construed these words to imply an intent requirement. We held that "on the basis of the plain language and the purpose of Section 3290 ... the government must show an intent to flee from prosecution or arrest before the statute of limitations is tolled." *Id.* We noted that the "common sense connotation" of the term "fleeing from justice" makes the phrase applicable "only [to] those persons ... who have absented themselves from the jurisdiction of the crime with the intent of escaping prosecution." *Id.* Indeed, we held, "[i]t does not appear to us to be unreasonable to provide for tolling of the statute of limitations when a person leaves the place of his alleged offense to avoid prosecution or arrest and for not tolling the statute when a person without such purpose of escaping punishment merely moves openly to another place of residence." *Id.* at 444–45; *see also United States v. Rivera–Ventura*, 72 F.3d 277, 280 (2d Cir.1995) (noting that "fleeing from justice" is a term that "has generally been interpreted to mean a flight with intent to avoid or frustrate prosecution").

The implementing regulation, 20 C.F.R. § 416.1339(b)(1), is consistent with a construction of the statute that includes a requirement of intentional "flight," and, indeed, may be stricter than the statute,

insofar as it provides that the effective date of a benefits suspension is the date of issuance of a warrant or order *issued by a court or other authorized tribunal* on the basis of a finding that an individual fled or was fleeing from justice. Thus, the regulation does not permit the *agency* to make a finding of flight; rather, it demands a court or other appropriate tribunal to have issued a warrant or order based on a finding of flight. The passages from the POMS and EM cited by the Commissioner state a directly contradictory position from the regulation. They contemplate suspension of benefits without any finding of "flight" by a court or other tribunal.

■ An agency's interpretation of its own statute and regulation "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (quoting *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) (internal quotation marks omitted)). The Commissioner's current interpretation is not a permissible construction of either the statute or the regulation because it contemplates suspension of benefits without any finding of "flight" by the agency, a court, or other tribunal. Therefore, it is not entitled to deference. Based on a plain reading of the statute and regulations, we conclude that benefits may be suspended only as of the date of a warrant or order issued by a court or other authorized tribunal on the basis of a finding that an individual has fled or was fleeing from justice.

The ALJ did not rely on such a warrant here; indeed, the ALJ assumed that a warrant for Fowlkes's arrest was sufficient to establish the effective date of benefits suspension. It appears that no warrant or order finding that Fowlkes has fled or was fleeing from justice exists. There is some

mention of a warrant issued on September 1, 1999 for "failure to appear," Joint App. at 168, but this warrant does not appear in the record, nor does it appear to have been presented to, or relied on by, the ALJ. Moreover, it is unclear whether such a "failure to appear" warrant would qualify as a sufficient judicial finding of flight under 20 C.F.R. § 416.1339(b)(1) to warrant suspension of benefits.[4]

In light of the foregoing, we find that the appropriate course is to remand this action to the District Court with instructions to treat Fowlkes's complaint as a petition for review of the SSA Commissioner's suspension of Fowlkes's benefits and remand to the Commissioner to examine whether Fowlkes's benefits were suspended as of the date of a warrant or order issued by a court or other authorized tribunal on the basis of a finding that Fowlkes fled or was fleeing from justice, pursuant to 42 U.S.C. § 1382(e)(4)(A) and 20 C.F.R. § 416.1339(b)(1). *See, e.g., Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000) ("Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally vacate and instruct the district court to remand the matter to the Commissioner for further consideration."); *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir.1999) (" 'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence ....' " (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996) (internal quotation marks omitted) (alteration in original))).

## CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's ruling on Fowlkes's civil rights claim and REMAND this action to the District Court with instructions to treat Fowlkes's complaint as a petition for review of the SSA Commissioner's suspension of Fowlkes's benefits and to remand to the Commissioner for further proceedings consistent with this opinion.

---

4. We note that it is possible that such warrants may be so routinely ordered as not to evidence the sort of finding of flight contemplated by the statute.