Fowlkes v. Thomas

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2011

(Submitted: December 12, 2011　　　Decided: January 31, 2012)

————————————————————————————

FELIPE OTEZE FOWLKES,

*Plaintiff-Appellant*,

—v.—

PAUL THOMAS, District Manager &
JOHN ADAMEC, Counselor,

*Defendants-Appellees*,

JOSEPH F. GIBBONS, Administrative Law Judge,

*Defendant*

Docket No. 10-5192-pr

————————————————————————————

B e f o r e : SACK, KATZMANN, PARKER, *Circuit Judges*.

————————

Plaintiff-Appellant Felipe Oteze Fowlkes appeals from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*) denying his motion "for compliance" with a June 29, 2007 Order of an Administrative Law Judge awarding Fowlkes $9,785.37 in past social security benefits. We hold that the Social Security Administration is barred by the No Social Security Benefits for Prisoners Act, Pub. L. No. 111-115, 123 Stat. 3029 (2009) (the "Act"), from tendering payment to Fowlkes while he remains incarcerated, even though the underlying obligation to pay arose before the Act's enactment. Accordingly, the judgment of the district court is **AFFIRMED**.

————————

Counsel for Plaintiff-Appellant:        FELIPE OTEZE FOWLKES, *pro se*, Shirley, MA

Counsel for Defendants-Appellees:        KRISTINA COHN, Special Assistant United States Attorney (Stephen P. Conte, Regional Chief Counsel - Region II, Social Security Administration, *of counsel*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, N.Y.

_____

PER CURIAM:

Plaintiff-Appellant Felipe Oteze Fowlkes, *pro se* and incarcerated, appeals the district court's order denying his post-judgment motion for an order directing the Social Security Administration (the "SSA") to re-tender a check for retroactive supplemental social security benefits that he is owed. We hold that the No Social Security Benefits for Prisoners Act (or the "Act"), Pub. L. No. 111-115, 123 Stat. 3029 (2009), bars the SSA from making any payment to an incarcerated individual covered by the Act, regardless of when the underlying obligation to pay the individual arose. Accordingly, we affirm the district court's denial of Fowlkes motion.

In April 2002, Fowlkes, *pro se* and incarcerated, filed a complaint against John Adamec and Paul Thomas, two SSA officials, and Joseph F. Gibbons, an SSA administrative law judge ("ALJ"), alleging, *inter alia*, that his supplemental social security benefits had been improperly suspended in March 2000 on the erroneous conclusion that he was a fugitive felon, and that this suspension constituted a violation of his right to due process. The district court granted the defendants' motion to dismiss the complaint, determining, among other things, that Fowlkes was not seeking relief in the form of a remand to the SSA. Fowlkes appealed, and, in December 2005, this Court affirmed in part and remanded in part, holding that the district court had properly dismissed Fowlkes's due process claims, but that the court should have construed the remainder of his complaint as a petition for review of an adverse SSA determination. *See Fowlkes v. Adamec*, 432 F.3d 90, 95, 98 (2d Cir.

2

2005). Accordingly, we remanded to the district court with instructions that the case be further remanded to the SSA for additional proceedings. *Id.* at 98.

On remand, by Order dated June 29, 2007, an SSA ALJ held that there was no evidence that Fowlkes had been a fugitive felon, and that Fowles was therefore retroactively entitled to past supplemental social security benefits. In the Notice of Award, dated December 11, 2007, the SSA wrote "you are now eligible for SSI payments . . . . We are sending you your first SSI check of $9,785.37." The US Treasury then sent a check dated December 12, 2007 in that amount to Fowlkes at his prison address. When the check arrived at the prison, Fowlkes alleges that it was "intercepted" by prison authorities, who told Fowlkes that, pursuant to prison regulations, he could only endorse the check and deposit it into his inmate account. However, because he wanted to send the check to a person or a bank outside of the prison, Fowlkes refused to deposit the check into his inmate account and, in a letter dated January 3, 2008, the prison authorities returned the check to the SSA. In a correspondence dated January 7, 2008, the SSA acknowledged the receipt of the returned check. Subsequently, Fowlkes filed complaints with the Commissioner of the SSA and the United States Treasury Department to have the check returned, but was informed that he was no longer entitled to receive the check while incarcerated. In November 2010, Fowlkes filed the instant motion in the Northern District Court of New York seeking an order directing the SSA to re-tender the check to him.

Although we generally review a district court's decision on a post-judgment motion for abuse of discretion, "where the determination is based upon a legal interpretation, *de novo* review is appropriate." *Mortimer Off Shore Servs. v. Fed. Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010), *cert denied*, 131 S Ct. 1502 (2011).

3

On December 15, 2009, Congress enacted the No Social Security Benefits for Prisoners Act with the express purpose of "prohibit[ing] retroactive payments to individuals during periods for which such individuals are prisoners." Pub. L. No. 111-115, pmbl., 123 Stat. 3029, 3029 (2009). To that end, § 2(b) of the Act amended 42 U.S.C. § 1383(b), which addresses, *inter alia*, the procedure to be used by the SSA when it is determined that a recipient of supplemental social security disability benefits has been underpaid. *See* Pub. L. No. 111-115, § 2(b). Specifically, the Act provides that:

> In the case of payment of less than the correct amount of benefits to or on behalf of any individual, no payment shall be made to such individual pursuant to this subsection during any period for which such individual–
>
> (i)  is not an eligible individual . . . because such individual is an inmate of a public institution that is a jail, prison, or other penal institution or correctional facility . . .
>
> until such individual is no longer considered an ineligible individual . . . .

42 U.S.C. § 1383(b)(7)(A). The Act also provides that it "shall be effective for payments that would otherwise be made on or after the date of . . . enactment of this Act." Pub. L. No. 111-115, § 2(c).

Where the words of a statute are unambiguous, our inquiry is generally confined to the text itself. *See Universal Church v. Geltzer*, 463 F.3d 218, 223 (2d Cir. 2006) ("Statutory interpretation always begins with the plain language of the statute, assuming the statute is unambiguous."). Here, the text of the Act is clear: an incarcerated individual who has been underpaid social security benefits may not receive payment of those benefits until he or she is released from prison. In particular, we read the relevant statutory language, that the Act "shall be effective for payments that would otherwise be made" after the date of the Act's enactment, as clearly stating that no payments

4

shall be made to prisoners after the Act's enactment, even if the underlying obligation to pay predates the Act. Accordingly, because the SSA's issuance of a check constitutes a "payment," the SSA is barred under the plain language of § 1383(b)(7)(A) from tendering a check to Fowlkes until he is released from prison. The fact that SSA had attempted to pay Fowlkes in 2007, before the Act's enactment, does not affect this result. To pay Fowlkes now would require SSA to re-tender a check to him while he remains "an inmate of a public institution that is a jail, prison, or other penal institution or correctional facility." 42 U.S.C. § 1383(b)(7)(A). The text of the Act clearly bars such payments, without exception. *See id.* ("no payment shall be made . . . during any period" in which an individual is incarcerated).

Moreover, even if we were to find the text of the Act ambiguous, which we do not, the Act's legislative history makes clear that Congress intended to prohibit any payments of social security benefits to prisoners, without exception, after the Act's effective date. In particular, during the floor debate in the House of Representatives, the Act's House co-sponsors emphasized the "need for this law to be done quickly . . . because . . . [w]ithout this legislation, the [SSA] will be obligated under court order to make payments to some [incarcerated individuals] as early as next week." 155 Cong. Rec. H13,596 (2009) (statement of Rep. Tanner); *see also id.* at H13,597 (statement of Rep. Herger) ("The bill before us would immediately prevent checks for past-due Social Security and SSI benefits from being sent to currently incarcerated individuals, including checks that, without this action, could pay inmates tens of thousands of dollars while they are behind bars"). Accordingly, in an effort to ensure that the SSA would be immediately barred from making any payments of retroactively-issued social security benefits to prisoners, the House of Representatives suspended its rules and passed the Act on the same day it was introduced for

debate. *See id.* This legislative history strongly indicates that Congress intended the Act to bar retroactive payments of social security benefits even in cases where, like here, the SSA had made an unsuccessful attempt to render payment over two years before the date of the Act's enactment.

Finally, the Act is not impermissibly retroactive because it directs only that social security benefit payments be held until an individual is "no longer considered . . . ineligible" to receive benefit payments under the Act, through their release from incarceration. 42 U.S.C. § 1383(b)(7)(A). Accordingly, the Act alters only the procedure and timing by which certain individuals receive their retroactive social security benefit payments; it does not affect their substantive right to those benefits. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70 (1994) ("A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.") (internal citation and footnote omitted)). And the Act did not "impose new duties with respect to transactions already completed," *id.* at 280, because Fowlkes had not completed the payment transaction by accepting the funds prior to the Act's effective date.

Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.