# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 7, 2015

## STATE OF TENNESSEE v. JOHN N. MOFFITT

**Appeal from the Circuit Court for Henderson County**
**No. 131231     Roy B. Morgan, Jr., Judge**

_____

**No. W2014-02388-CCA-R3-CD  -  Filed January 29, 2016**

_____

Defendant, John N. Moffitt, was convicted of reckless aggravated assault and sentenced to four years' incarceration to be served at 30 percent release eligibility. Defendant was also ordered to pay restitution and a $2,500 fine. On appeal, Defendant asserts that the evidence was insufficient to support his conviction; that the trial court erred by failing to instruct the jury that his conduct must have caused serious bodily injury; that the evidence was insufficient to support the trial court's order of restitution; and that the trial court erred by imposing the maximum sentence within the applicable range. Having carefully reviewed the record before us, we affirm Defendant's conviction and sentence. However, we reduce the amount of restitution and remand this case to the trial court to determine Defendant's ability to pay restitution.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Modified in Part, and Remanded

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Michael Thorne, Lexington, Tennessee, (on appeal), and John S. Colley, Columbia, Tennessee, (at trial), for the Appellant, John N. Moffitt.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; and James G. Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

*Facts*

On May 16, 2013, Stephen Phelps, the victim in this case, was doing repair work for landowner Charles McPeake on a fence and outbuilding that had been damaged in a storm. At approximately 4:00 p.m., Mr. Phelps began loading his tools into his truck. Mr. Phelps "heard two people kind of being loud with each other[.]" He turned around and saw Defendant and Orbin McPeake arguing about the fence. Mr. Phelps approached the men and told Defendant to "[c]hill out" because they were going to repair the fence. Defendant told Mr. Phelps to put the fence back up, and Mr. Phelps told Defendant to "[j]ust go on home." Defendant turned around to leave and then turned back towards Mr. Phelps. Mr. Phelps testified, "as he was doing that, I saw him reach into his pocket and he pulled out a pocket knife and he opened it up, and he says, 'well maybe you want some of this before I leave[.]'" Defendant swung the knife across Mr. Phelps body and back across his body a second time. Mr. Phelps raised his arm to block it, and on the second swing across his body, "it sunk in [his] arm[.]" Defendant "just turned and walked away[.]" Mr. Phelps "could not believe that it happened." He wrapped up his arm and drove to the hospital. Mr. Phelps testified that he could not use his arm for approximately four months. He testified that he still had numbness in one of his fingers and pain in his shoulder. He was unable to perform certain tasks as well as he could prior to the injury.

On cross-examination, Mr. Phelps testified that he had only seen Defendant once before the incident. He testified that the fence had been taken down for approximately one month prior to the incident while he worked to repair the barn. Mr. Phelps testified that he took one or two steps towards Defendant after Defendant pulled out the knife.

Orbin McPeake testified that he had known Defendant for "[a] long time." He testified that on the day of the incident, Defendant "just came out there and jumped on us and told us we needed to get that fence put up by 4:00 or something like that[.]" Mr. McPeake told Defendant that they were working to "get everything cleaned up." Mr. McPeake testified that he saw Defendant and Mr. Phelps "in each other's face[s], and Phelps told [Defendant] he needed to go home[.]" Mr. McPeake saw Defendant reach into his pocket, and he saw Defendant and Mr. Phelps "arguing right close together and [Mr. McPeake] was trying to get them to go home and be quiet and let everything go, and they just kept arguing." Mr. McPeake testified that he "d[id]n't think [Mr. Phelps] was really threatening [Defendant]. He was just talking and telling him that we was gonna fix that back and that wasn't none of his business." Mr. McPeake heard Mr. Phelps tell Defendant to go home. Mr. McPeake testified Defendant and Mr. Phelps "met together."

2

He testified, "I don't know where they – one of them run any more at the other one than one did it at the other one [sic]."

William Patterson was also present during the incident. He testified that "Mr. Phelps went to walking over there towards [Defendant], and that's when he run his hand in his pocket and came out and cut him." Mr. Patterson testified that he did not hear Mr. Phelps make any threats against Defendant.

Donna Heatherington, a criminal investigator with the Lexington Police Department, spoke to Mr. Phelps at the hospital and took photographs of his injury. She also took statements from Mr. Patterson and Mr. McPeake. Officer Heatherington arrested Defendant at his residence. She testified that she knocked on Defendant's door, and Defendant "hollered, 'Come on in. I know why you're here.'" She asked Defendant to empty his pockets, and Defendant had a pocketknife in his right pocket. Officer Heatherington testified that Defendant's hand was injured when she put handcuffs on him.

Defendant's brother, Sam Moffitt, testified that Mr. McPeake told him after the incident that Defendant turned around to leave, and Mr. Phelps "jumped on him, and that's what caused the altercation." Mr. Moffitt testified that Mr. McPeake told him, "If [Mr. Phelps] had just sat still and let [Defendant] go on, none of this would have happened." On cross-examination, Mr. Moffit clarified what he meant by "jumped on." He testified, "Well, I don't mean physically jumped on him, but he said, 'I'm going to do something to you,' and made some threatening statement and took off after him.'"

Defendant testified that he rented property adjacent to the property where work was being done to repair a tractor shed damaged by a storm. On the day of the incident, Defendant approached Orbin McPeake and asked why the fence had been torn down. Defendant testified that Mr. McPeake began cussing and told Defendant that he "told them to tear it down." Defendant testified that he turned around and began walking away, "and the next thing I knew, somebody was behind me[.]" He testified, "[Mr. Phelps] was in my face like that with his arm, and he swung at me with something in his hand." Defendant testified that Mr. Phelps hit the back of Defendant's hand with a tripod tool. Defendant pulled out his pocketknife and cut Mr. Phelps' arm.

*Analysis*

*Sufficiency of the evidence*

Defendant contends that the evidence was insufficient to support his conviction. An appellate court's standard of review when the defendant questions the sufficiency of

3

the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The offense of reckless aggravated assault requires a finding that the defendant has recklessly committed an assault that results in serious bodily injury to another, or results in the death of another, or involved the use or display of a deadly weapon. T.C.A. § 39-13-102(B). A person acts recklessly with respect to circumstances surrounding their conduct or the result of their conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint. T.C.A. § 39-11-302(c).

Defendant contends that he was not aware "that waving his knife would cause the injuries sustained by the victim, particularly in light of the fact that the victim walked toward [Defendant] as he stood still." Viewed in a light most favorable to the State, the evidence shows that Defendant turned away to leave and then turned back towards Mr. Phelps. Defendant pulled out a pocketknife and threatened, "Well maybe you want some of this before I leave." Defendant then swung the knife across Mr. Phelps' body twice, cutting Mr. Phelps' arm as he swung back across and Mr. Phelps raised his arm to block the knife. Defendant then turned and walked away. This evidence is sufficient to support Defendant's conviction for reckless aggravated assault.

Defendant also contends that the evidence showed that he was acting in self-defense. The use of force likely to cause death or serious bodily injury may be justified when a person (1) "has a reasonable belief that there is imminent danger of death or serious bodily injury"; (2) "[t]he danger creating the belief of imminent death or serious

4

bodily injury is real, or honestly believed to be real at the time"; and (3)"[t]he belief of danger is founded upon reasonable grounds." T.C.A. § 39-11-611(b)(2). Self defense is a question of fact for the jury. *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn., Crim. App. 1994).

Defendant asserts that the evidence established that Mr. Phelps moved closer to Defendant after Defendant brandished the knife. Mr. Phelps testified that he did not feel threatened by the knife, and he said to Defendant, "So you're going to stab me with that." Defendant argues that Mr. Phelps' testimony established that Mr. Phelps was the initial aggressor. Defendant further asserts that he felt threatened by Mr. Phelps when Mr. Phelps swung a tool at him. However, the jury was free to discredit Defendant's testimony that he used force to protect himself against threats from Mr. Phelps. Other witnesses testified that Mr. Phelps was unarmed and that he did not threaten Defendant. The evidence showed that Defendant returned to Mr. Phelps after initially turning away, uttered a threat, and used a knife on an unarmed man. The jury's verdict shows that it rejected Defendant's claim of self-defense. Defendant is not entitled to relief on this issue.

*Jury instructions*

Defendant contends that the jury's verdict was contrary to the applicable law because the jury charge contained errors. Defendant argues that the trial court failed to instruct the jury that his conduct must have caused serious bodily injury in order to amount to reckless aggravated assault. The State responds that Defendant has waived this issue by failing to object to the jury instructions. "Questions concerning the [jury] instructions are generally deemed to be waived in the absence of objection or special request, unless they contain plain error." *State v. Cravens*, 764 S.W.2d 754, 756-57 (Tenn. 1989). The record shows that Defendant stated no objection to the jury charge. Additionally, Defendant's motion for new trial asserted only that "[t]he verdict was contrary to applicable law." Defendant did not assert that the jury instruction was inadequate. Therefore, Defendant has waived appellate review of the issue. *See* Tenn. R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error in the . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Defendant does not ask this court to consider whether the omission in the jury instructions was plain error. Nevertheless, the State asserts that the instruction was not plainly erroneous because Defendant was indicted on the basis that he used a deadly

5

weapon, and not on the basis that Defendant caused serious bodily injury to the victim. Despite Defendant's waiver of the issue, we conclude that the trial court's omission of the element of serious bodily injury in its instructions to the jury was appropriate based on the theory of aggravated assault under which Defendant was charged. In fact, the trial court would have erred if it had charged the jury that the State had to prove serious bodily injury to the victim.

"It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011). Defendant was indicted for one count of aggravated assault. The indictment alleges that Defendant "did intentionally and/or knowingly cause bodily injury to [the victim] by use of a deadly weapon, to-wit: a knife . . . ." Defendant was convicted by a jury of the lesser-included offense of reckless aggravated assault. The trial court instructed the jury as to reckless aggravated assault as follows:

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> Part F:
>
> (1)(a) that the defendant recklessly caused bodily injury to another; and
> (2)(b) that the defendant used or displayed a deadly weapon.

Defendant is not entitled to relief on this issue.

*Restitution*

Defendant challenges the trial court's order regarding the payment of restitution, arguing both that the proof was insufficient to show that the victim suffered a loss in the amount of $27,129, the amount of restitution ordered by the trial court, and that the trial court failed to consider Defendant's financial resources and ability to pay restitution. The State responds that the record supports the restitution award and that the trial court did not abuse its discretion in ordering Defendant to pay restitution to the victim.

When a defendant challenges the restitution amount ordered by the trial court, this court will utilize an abuse of discretion standard of review with a presumption that the trial court's ruling was reasonable. *See State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012); *see also State v. David Allen*

*Bohanon*, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *4 (Tenn. Crim. App., at Nashville, Oct. 25, 2013), *no perm. app. filed* (concluding that "the appropriate standard of review for restitution orders is the abuse of discretion standard with a presumption of reasonableness"). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). Furthermore, the defendant bears the burden of demonstrating the impropriety of the sentence. *See* T.C.A. § 40-35-401 (2014), Sentencing Comm'n Cmts; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

While there is no set formula for determining restitution, above all, the restitution amount must be reasonable. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). When ordering restitution, the trial court must base the amount on the pecuniary loss to the victim. T.C.A. § 40-35-304(b); *Smith*, 898 S.W.2d at 747. The amount of restitution ordered, however, "does not have to equal or mirror the victim's precise pecuniary loss." *State v. Mathes*, 114 S.W.3d 915, 919 (Tenn. 2003) (quoting *Smith*, 898 S.W.2d at 747). "Pecuniary loss" is statutorily defined as "[a]ll special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant." T.C.A. § 40-35-304(e)(1) (2010). "Special damages" are "the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case . . . ." *State v. Lewis*, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995) (quoting Black's Law Dictionary 392 (6th ed.1990)). Tennessee law mandates that "[i]n determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform." T.C.A. § 40-35-304(d) (2014). This is because "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim." *State v. Johnson*, 968 S.W.2d 883, 886 (Tenn. Crim. App. 1997).

In ordering restitution, the trial court shall specify the amount of time and payment and may permit payment or performance of restitution in installments. T.C.A. § 40-35-304(c). The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence. T.C.A. § 40-35-304(g)(2). If the defendant, victim, or district attorney petitions the trial court, it may hold a hearing and, if appropriate, waive, adjust, or modify its order regarding restitution. T.C.A. § 40-35-304(f). Further, any unpaid portion of the restitution may be converted to a civil judgment. T.C.A. § 40-35-304(h)(1); *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001).

At the sentencing hearing, the victim, Mr. Phelps, testified that he incurred medical expenses in the amount of $25,063 as a result of his injury. He testified that insurance only covered $1,231 of his expenses. A copy of Mr. Phelps' hospital bill was

7

entered into evidence. The bill showed total charges of $25,063, it showed a credit for total payments in the amount of $1,055.83, and it showed a "total adjustment" of $24,007. A separate document showed total payments processed by the Veteran's Administration in the amount of $1,281.31. Mr. Phelps testified that he understood that the hospital would "write off" the charges in the event that "there's no judgment and there's no compensation . . . ." He testified that he was self-employed and was unable to work for four months as a result of his injury. Mr. Phelps testified that he was supposed to have been paid $2,700 to complete the job he was working on when the incident happened, that he did not receive any payment for the job, and that he did not have other jobs lined up at the time of the incident.

Tim McPeake testified that Defendant rented property owned by Mr. McPeake's mother. Defendant paid rent "every month just like clockwork." Defendant also mowed the property and cooked meals for Mr. McPeake's mother.

The trial court heard the arguments of counsel, which are not part of the record before us, and stated that it had reviewed the presentence report. The presentence report reflects that Defendant was 65 years old at the time of sentencing and was divorced. Defendant had two prior DUI convictions in 2008 and 2012; a conviction in 2007 for reckless driving; and a conviction in 1988 for second degree murder. The highest grade in school completed by Defendant was eighth grade. Defendant had prior work experience as a welder. Defendant had various health problems and had undergone back surgery. Defendant reported that "he became disabled in 1987 after being hurt twice on the job, and having a mental breakdown." Defendant's driving privileges were revoked for a prior DUI conviction. Defendant received $836.00 per month in social security income. Defendant listed as his only asset a 1983 Buick Regal.

At the conclusion of the sentencing hearing, the trial court approved a $2,500 fine imposed by the jury. The court stated that it had reviewed the entire record, the evidence presented at trial, the presentence report, the victim's hospital bill introduced as an exhibit, and the nature and characteristics of the criminal conduct involved. The trial court ordered restitution in the amount of $27,194. The court explained that restitution included the victim's unpaid medical expenses, as well as lost earnings in the amount of $2,700.

Defendant contends that the evidence presented at the sentencing hearing was insufficient to establish the amount of the victim's loss. Defendant argues that Mr. Phelps's testimony regarding his lost wages, without further proof, is insufficient. This court has noted that a victim seeking restitution must present sufficient evidence to allow the trial court to make a reasonable, reliable determination as to the amount of the victim's losses. *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001).

8

General statements by a victim regarding the amount of his or her loss containing no explanation as to how the victim arrived at the amount are insufficient. While a victim's testimony standing alone may be sufficient to establish special damages for the purposes of restitution, the victim should explain how he or she arrived at the amount of damages requested. Further, documentation supporting the victim's testimony is helpful.

*State v. Jerry Lee Truette*, No. M2005-00927-CCA-R3-CD, 2006 WL 2000540, at *3 (Tenn. Crim. App., Nashville, July 19, 2006) (quoting *State v. Charles R. Turner*, No. M2003-02064-CCA-R3-CD, 2004 WL 2775485, at *8 (Tenn. Crim. App., Nashville, Dec. 1, 2004)).

The trial court ordered restitution for Mr. Phelps' lost wages in the amount of $2,700. At the sentencing hearing, Mr. Phelps explained that he was self-employed and was unable to work for four months as a result of his injury. He testified that he was supposed to be paid $2,700 to complete the job on which he was working on the day of the assault, that he was never paid for the job, and that he did not have other jobs lined up at the time of the incident. Although no documentation of Mr. Phelps' lost wages was admitted into evidence, we conclude that his testimony was sufficient to establish this loss.

Defendant also argues that Mr. Phelps' medical bills established that Mr. Phelps did not pay any of his medical expenses out-of-pocket. Defendant contends that restitution should not be allowed because the victim's medical bills were either covered by insurance or were "written off" by the hospital. At the sentencing hearing, Mr. Phelps testified as to the amount of his uncompensated medical bills. Mr. Phelps' hospital bill was presented as evidence. The bill showed that Mr. Phelps incurred medical expenses in the amount of $25,063 as a result of his injury. The bill showed total payments in the amount of $1,055.83 and a total adjustment of $24,007.17, with a "CR" notation beside both the payments and adjustments. The bill showed the total amount due as $0.00. Mr. Phelps testified that he understood that the hospital would "write off" that amount in the event that "there's no judgment and there's no compensation . . . ."

The evidence shows that at the time of sentencing, the victim owed a zero balance for his medical expenses, and the balance not paid by insurance had already been "written off" by the hospital. Therefore, the victim incurred no actual loss. The prosecutor stated at the sentencing hearing, "technically [the victim]'s still liable for [$24,007 in medical expenses]. Now they have not sued him for it, but he's the one on the bill, and at this point it has not been written off." However, the hospital bill shows that the victim did

not owe that amount. We recognize that "[t]he victim in the case is the person who incurred the losses as he is personally responsible for the medical bills incurred as a result of [the offense]. Thus, he is the proper person to receive that restitution." *State v. Steven Watson*, No. W2008-00452-CA-R3-CD, 2009 WL 2407752, at *13 (Tenn. Crim. App., Jackson, Aug. 6, 2009). Where there is an expectation that a hospital might absorb the loss in the future, this court has upheld a restitution award, noting that "[i]t will be the victim's responsibility to forward the restitution received to the proper parties, if necessary; such is not a matter for this Court." *State v. Victor Wayne Browning*, No. M2009-00509-CCA-R3-CD, 2010 WL 877523, (Tenn. Crim. App., at Nashville, Mar. 12, 2010). In this case, however, due to reasons not ascertainable from the hospital bill or the victim's testimony, the victim's bill had already been adjusted and a credit of $24,007.17 was applied, resulting in a balance of $0.00. The evidence shows that the victim was not responsible for any amount. Therefore, we conclude the evidence does not support the trial court's order for restitution for the victim's medical expenses.

Regarding Defendant's ability to pay the ordered restitution during the length of his sentence, the record is silent. The trial court did not consider Defendant's financial resources and his future ability to pay as required by statute, nor did the trial court impose a payment schedule for restitution. The trial court noted that Defendant was indigent and stated,

> [The statute] doesn't say that I cannot assess or include restitution in the judgment if the Defendant is indigent, it says you can come back and ask the Court to forgive it and waive it, but it doesn't say I can't assess the restitution amount, at least I didn't see it as I've looked through it here on the bench, that I could not do that. But the question of indigency could apply toward a fine as well as restitution.

The record established that Defendant dropped out of school after eighth grade, he was disabled, and he owned no property. Defendant received a sentence of incarceration. He received social security income in the amount of $836.00 per month prior to his incarceration. We note that the No Social Security Benefits for Prisoners Act of 2009 bars social security payments to individuals during periods of incarceration. 42 U.S.C. § 1383(b)(7)(A); *see also Fowlkes v. Thomas*, 667 F.3d 270, 271 (2d Cir. 2012) (per curiam). Essentially the legislative branch took away a victim's ability in many cases to recover restitution from incarcerated defendants in Tennessee. As this court noted in *State v. Bottoms*, "it would appear to be a difficult exercise for the trial court to establish a payment schedule, for it is unclear when the defendant will be released and what his future income will be." 87 S.W.3d at 108. Nevertheless, Tennessee Code Annotated Section 40-35-304(c) requires that a trial court, in ordering restitution, consider not only the amount of the victim's loss but also the amount which a defendant can reasonably

pay. Furthermore, the period during which the defendant can be made to pay restitution extends only until the expiration of the sentence imposed by the trial court. T.C.A. § 40-35-304(g)(2).

We have concluded that the amount of restitution ordered by the trial court must be reduced to exclude all medical expenses. The proof showed that all medical expenses were either paid by the insurance company or forgiven ("written off") by the medical provider(s). The victim himself did not have to pay any medical expenses. We have also concluded that the victim sufficiently proved his lost wages. Therefore, we modify the restitution amount to $2,700, representing the victim's lost wages. Accordingly, restitution is modified to the amount of $2,700, and this case is remanded for the trial court to determine Defendant's ability to pay and an appropriate payment schedule in accordance with applicable statutory provisions.

*Length of sentence*

Defendant contends that the trial court erred by sentencing him to the maximum sentence within the applicable range. Defendant argues that "the record is devoid of any specific written or articulated factors for imposing the maximum sentence within the range." The State responds that under the *Bise* standard of review, Defendant's challenge to the length of his sentence is without merit.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement and mitigating factors are *advisory only*. *See* T.C.A. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select *any sentence within the applicable range* so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act]." *Id.* at 343 (emphasis added). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a

11

manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

In *Bise*, our supreme court held:

> We hold, therefore, that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court *wholly departed* from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706 (emphasis added). In its conclusion, the supreme court pointed out that in sentences involving misapplication of enhancement factors (even in those cases where no enhancement factor actually applies) the sentences must still be affirmed if the sentences imposed are within the appropriate range, and the sentences are in compliance with statutory sentencing purposes and principles. *Id*. at 710.

Our General Assembly has enacted twenty-five (25) statutory sentencing enhancement factors; however, they are not binding upon the trial courts. T.C.A. § 40-35-114 (Supp. 2015). The standard of review established in *Bise* provides that the minimum sentence can be imposed even if the trial court correctly applies all twenty-five enhancement factors, or conversely the maximum sentence can be imposed even if no statutory enhancement factors are applicable, so long as the sentence is within the correct range and the sentence complies with the sentencing purposes and principles. Accordingly, appellate review of enhancement factor issues is mostly unnecessary when reviewing the length of a sentence.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

12

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. T.C.A. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

In this case, the trial court explicitly stated that it had considered the evidence presented at trial, the presentence report, and the nature and characteristics of the criminal conduct involved. The trial court sentenced Defendant to four years, the maximum sentence within the range, and there is nothing in the record indicating that the trial court erred by doing so under the standard of review adopted in *Bise*.

The trial court did not abuse its discretion when it sentenced the Defendant to four years' incarceration.

## CONCLUSION

Based upon the foregoing, the judgment of conviction and sentence imposed, with respect to length and manner of service, are affirmed. The amount of restitution to which the victim is entitled is reduced to $2,700, and this case is remanded for a determination of Defendant's ability to pay restitution and an appropriate payment schedule.

_____
THOMAS T. WOODALL, PRESIDING JUDGE